UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERRY T. MANUEL, 04-B-0932,

    Petitioner,

      -v-                                   07-CV-6623(MAT)(VEB)
                                                    **ORDER**

JAMES T. CONWAY, Superintendent,

    Respondent.

---

**I. Introduction**

Petitioner Terry Manuel ("petitioner"), proceeding *pro se*, has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25(1)) for the stabbing death of Michael Lahey ("the victim"). Petitioner's judgment of conviction was entered on April 2, 2004, following a jury trial before Judge John. J. Connell in Monroe County Court.

**II. Factual Background and Procedural History**

On Memorial Day weekend in 2002, petitioner and William Briggs ("Briggs") drove to the City of Rochester in petitioner's truck with a total of $2,400 in cash, to use in their pursuit of drugs and women. After picking up a woman at approximately 6:00 a.m., the three went to the victim's apartment at 500 ½ Lyell Avenue to buy drugs, which was known to be a "crack house" and a "flop house" for

prostitutes, where they all partook in smoking cocaine until noon. T. 206-220, 225-26, 543-47.[1]

Two weeks later, Briggs and petitioner returned to 500 ½ Lyell Avenue to purchase drugs. Petitioner obtained cocaine, which he and Briggs smoked. Sometime thereafter, Briggs heard a "commotion" in another room in the house. He observed petitioner stabbing the victim repeatedly, and unsuccessfully attempted to restrain petitioner. Briggs then rushed to exit the house, followed by petitioner, and the two drove off in petitioner's truck. An autopsy revealed that the victim suffered 117 stab wounds. T. 354, 547-576. Petitioner was later charged in Monroe County Court with second-degree murder under the alternative theories of intentional and depraved-indifference murder.

A jury trial was held over eight days in February, 2004. The theory of petitioner's defense was that he had no motive to kill the victim, but that others in the house did.[2] T. 884-916. Petitioner did not present any witnesses, nor did he testify on his own behalf. The jury found petitioner guilty of intentional murder and he was subsequently sentenced to twenty-five years to life imprisonment. T. 980, S. 20.

Through counsel, petitioner raised four points in his direct appeal to the Appellate Division, Fourth Department: (1) petitioner

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing minutes.

[2] At least seven different lawyers were assigned to represent petitioner, two of which were relieved because of petitioner's threatening behavior. Hr'g Mins. dated 11/26/2003 at 4-9.

was denied his constitutional right to a speedy trial; (2) prosecutorial misconduct on summation; (3) the trial court erroneously submitted intentional and depraved indifference murder charges to the jury; and (4) a violation of his right to counsel at an investigatory line-up. See Respondent's Appendix ("Appx.") at B. He raised a fifth point in a *pro se* supplemental brief, alleging that he had been denied the effective assistance of trial counsel. See Pro Se Appellate Br., No. 0567/2002, dated 1/26/2007.[3] The Fourth Department unanimously affirmed the judgment of conviction. People v. Manuel, 39 A.D.3d 1185 (4th Dept. 2007); lv. denied, 9 N.Y.3d 878 (2007).

Petitioner then brought a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. #1). Therein, petitioner raises the same grounds as he did on direct appeal. For the reasons that follow, the Court finds that petitioner is not entitled to writ, and the petition is dismissed.

**III. Discussion**

    **A.   General Principles Applicable to Federal Habeas Review**

        **1.   Standard of Review**

The standard of review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, as codified in 28 U.S.C. § 2254(d). Under AEDPA, a habeas petition challenging a state court conviction may not be granted unless the

---

[3] The respondent did not include petitioner's *pro se* supplemental brief in the bound exhibits.

state court acted in a way that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "Clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). Factual determinations made by State courts are "presumed to be correct," and a habeas petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (holding that the standard for rebutting the presumption of correctness is "demanding but not insatiable" (citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

**B. Merits of the Petition**

**1. Constitutional Right to a Speedy Trial**

Petitioner contends that his constitutional right to a speedy trial was violated "when his trial was delayed for over a year through no fault of his own," which resulted in the loss of "tangible evidence" that he claims would have exonerated him. See Petition ("Pet.") at Attach. #4, Ground One. The Appellate Division rejected this claim on the merits:

> Defendant contends that he was denied his
> constitutional right to a speedy trial based

> on the approximately 17-month delay between
> his arraignment and the commencement of trial.
> We reject that contention. Most of the delay
> resulted from defendant's seven attorney
> substitutions, some of which were made after
> defendant allegedly threatened his attorney.
> Defendant also failed to show that he was
> prejudiced by the delay.

Manuel, 39 A.D.3d at 1186 (citing People v. Taranovich, 37 N.Y.2d 442, 445-46, 446-47 (1975); other citations omitted).

It is well-settled that "[t]he right of an accused to a speedy trial is guaranteed by the sixth amendment, U.S. Const. amend. VI, and is imposed upon the states by the due process clause of the fourteenth amendment. Rayborn v. Scully, 858 F.2d 84, 88 (2d Cir. 1988), cert. denied, 488 U.S. 1032 (1989) (citations omitted). In Barker v. Wingo, 407 U.S. 514, 530 (1972), the United States Supreme Court established a balancing test for determining whether or not a criminal defendant's constitutional right to a speedy trial have been violated. The court identified four factors to be considered in conducting the balancing test, namely, the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.[4]

The Barker factors are "related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Thus, petitioner's seventeen month delay, standing alone, is insufficient for a finding of a speedy trial violation. The Second

---

[4] In People v. Taranovich, 37 N.Y.2d 442 (1975), the New York Court of Appeals adopted a substantially similar balancing test, using the following factors: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay."

Circuit has held that delays from seventeen months to six years do not amount to a deprivation of the right to a speedy trial. Flowers v. Warden, Conn. Corr. Inst., Somers, 853 F.3d 131, 133 (2d Cir. 1988) (collecting cases). Moreover, it is abundantly clear from the record that the primary reason for the delay was attributable to petitioner's multiple attorney substitutions. The sixth attorney assigned to petitioner did bring and argue a speedy trial motion before the trial court. See Hr'g Mins. dated 11/24/2003. Within two days, however, that attorney was also relieved from his assignment. Hr'g Mins. dated 11/24/2003. Finally, petitioner's claim of prejudice regarding the loss of exculpatory evidence is conclusory, self-serving, and completely unsubstantiated by the record. Examined under the Barker factors, the Court finds that petitioner's claim alleging a violation of his right to a speedy trial is without merit. The Appellate Division's determination thus did not run afoul of clearly established Federal Law.

### 2. Prosecutorial Misconduct

As he did in his direct appeal, petitioner claims that the prosecutor at his trial shifted the burden of proof and "ridiculed the defense" when the prosecutor used the phrase, "big conspiracy" during her summation. Pet. at Attach. #4, Ground Two; see also T. 926. The Appellate Division rejected this claim on the merits, finding that petitioner was not denied due process of law based on the prosecutor's use of that phrase. Manuel, 39 A.D.3d at 1186.

In order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Rather, a constitutional violation will be found only when the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused 'substantial prejudice' to the defendant." Id. (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989 (1982)).

The prosecutor's comments on summation were not improper and do not amount to a constitutional infirmity. Rather, they constituted a fair response to defense counsel's summation, in which he challenged the veracity of prosecution's witnesses and the strength of its case. See Knight v. Walsh, 524 F.Supp.2d 255, 287 (W.D.N.Y. 2007); e.g., T. 888-915, 926-27.

Assuming, *arguendo*, the comments were prejudicial, any such prejudice was mitigated by the trial judge's instructions to the jury: "The burden of proof never shifts to the Defendant. The Defendant never has a burden of proof, doesn't have to prove anything during a criminal case. The burden of proof rests completely on the prosecution, and throughout the entire trial the Defendant is never required to prove his innocence, in other words." T. 962. Furthermore, absent the prosecutor's alleged misconduct, the outcome of petitioner's trial would not have been different, in light of the abundant evidence against him. See, e.g., Modica, 663 F.2d at 1181 (holding that "if proof of guilt is strong, then the prejudicial effect of the [prosecutor's] comments tends to be deemed insubstantial"); see also Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir. 1991) ("Moreover, we believe that absent the alleged misconduct, given the overwhelming evidence of Strouse's guilt, he still would have been convicted."); accord, e.g., Norwood v. Artis, 487 F.Supp.2d 321, 332 (W.D.N.Y. 2007).

I find that petitioner was not denied due process because of the prosecutor's remarks on summation. The Appellate Division's decision therefore did not run afoul of clearly established federal law.

### 3. Submission of Intentional and Depraved Indifference Murder Counts

Petitioner next complains that the trial court should not have submitted both intentional and depraved indifference murder counts to the jury because the evidence did not support a charge of

depraved indifference murder. Pet. at Attach. #4, Ground Three. The Appellate Division held that there was no basis for reversal on that ground, because the jury only convicted petitioner of intentional murder.[5] Manuel, 39 A.D.3d at 1186.

The New York State Court of Appeals has determined that in most cases it is impermissible to charge both intentional murder and depraved indifference murder. People v. Payne, 3 N.Y.3d 266, 271 (2004); People v. Gonzalez, 1 N.Y.3d 464, 467 (2004) (affirming reversal of depraved indifference conviction because "defendant was guilty of an intentional shooting or no other"). These holdings were based upon the Court of Appeals decision in People v. Gallagher, 69 N.Y.2d 525 (1987), in which the court held: "[w]here a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative." Gallagher, 69 N.Y.2d at 528. This was the law at the time of the petitioner's conviction in 2004.[6] The Second Circuit has held that where the jury that convicted the petitioner was properly instructed to consider the depraved indifference and intentional theories in the alternative, and returned a guilty verdict only on one theory, there was no Gallagher error. Policano

---

[5] A person is guilty of intentional murder when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal L. § 125.25(1).

[6] Payne was decided on October 19, 2004; petitioner's conviction was entered on April 2, 2004.

v. Herbert, 453 F.3d 79 (2d. Cir. 2006).[7] Here, the jury was properly instructed to consider the assault charge based upon depraved indifference only in the alternative. T.963. See Johnson, 2009 WL 3165842 at *8; Burgos-Santos v. Greene, 2009 WL 1916376, *8, n. 3. (S.D.N.Y. 2009).

Recently, the Second Circuit has held that the Due Process Clause of the Fourteenth Amendment of the United States Constitution does not require the retroactive application of the new interpretation of New York's depraved indifference murder statute on collateral review of petitioner's conviction. Henry v. Ricks, 578 F.3d 134 (2d. Cir.2009). In any event, ultimately the question is whether the evidence adduced at trial was sufficient to support the conviction. Policano v. Herbert, 507 F.3d 111 (2d Cir. 2007). In this regard, a habeas corpus petitioner is entitled to habeas corpus relief only if it is found that "'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Policano, 507 F.3d. at 115-116 (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). "[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of

---

[7] In 2002, in People v. Sanchez, 98 N.Y.2d 373, 378(2002), the Court of Appeals held that, if the only rational view of the evidence is that a defendant acted, if at all, with specific intent to kill, it would be procedural error to submit both intentional and depraved indifference murder theories to the jury. The United States Supreme Court has not ruled that allowing both intentional and depraved murder charges go to the jury constitutes a due process violation. Johnson v. Graham, No. 07-CV-269S, 2009 WL 3165842, *8 (W.D.N.Y. Sept. 28, 2009).

insufficiency of the evidence." Policano, 507 F.3d. at 116 (quoting Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000)).

The prosecution in this case presented evidence at trial that petitioner was at the victim's home on Memorial Day weekend and again on June 18, and that he had been introduced to the victim by a prostitute whom petitioner picked up with Briggs. Petitioner was seen at the victim's house on both occasions by multiple witnesses. A medical examiner testified that the victim was stabbed 117 times (four of the wounds were fatal), and that the body indicated signs of a struggle with the assailant. Petitioner, three days after the murder, went to the hospital with a slice on his finger. Further, the petitioner's truck was identified by witnesses; petitioner reported that same vehicle stolen three days after the murder. Multiple withdrawals from petitioner's bank account were made in the days following the stabbing. Finally, petitioner wrote a note implicating himself in the crime.[8] Handwriting analysis indicated that the note matched other documents that had been signed by petitioner. Petitioner's blood was also found on the note.

In sum, the record contains ample evidence to sustain petitioner's second-degree intentional murder conviction.

---

[8] The note, introduced as People's Exhibit 25, reads: "I, Terry Manuel, am sorry for getting Bill Briggs into trouble. He tried to stop me from beating a guy. He really did, but I was high on crack. And now that I am coming down, I realize what I had done. Bill Briggs had nothing to do with me cutting Mike's throat and stabbing him over and over. He tried to take the knife away from me. That's that. So, fuck off, see you all in hell. Yours truly, Terry T. Manuel." T. 855.

Accordingly, petitioner is not entitled to habeas relief on this ground.

### 4. Right to Counsel at Investigatory Lineup

Petitioner next avers that his right to counsel was violated when he was forced to appear in a lineup after he invoked his right to counsel. Pet. at Attach. #5, Ground Four. The Appellate Division rejected this argument on the merits, holding that his right to counsel had not attached when petitioner was asked to participate in a lineup. Manuel, 39 A.D.3d at 1186.

A Wade[9] hearing was conducted on August 18, 2003. The trial court made the following findings of fact: that on September 12, 2002, petitioner was approached by two investigators from the Rochester Police Department while he was visiting his parole officer. That afternoon, petitioner was advised of his Miranda rights by an investigator, and he agreed to speak with officers about the murder investigation. Approximately an hour-and-a-half later, petitioner asked if he was being charged with the murder, and the officers acknowledged that he was. Petitioner then indicated that he wanted to speak to his attorney. Officers did not inquire as to the name of petitioner's attorney, but they did cease questioning at that time. Petitioner was then brought to the Rochester Public Safety Building and was asked to stand in a line-up the following morning, and petitioner agreed. Police

---

[9] United States v. Wade, 388 U.S. 218 (1967) (Due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

subsequently permitted petitioner to call his girlfriend, who was told to have a friend call "an attorney", and petitioner proceeded to stand in the line-up. Following that line-up, a felony complaint was filed against petitioner. See Appx. C at 60.

A state court's factual findings are presumed correct absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e) ("a determination of a factual issue by a State court shall be presumed to be correct" and "the [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). The trial court then concluded, as a matter of law, that because the police were still in the investigatory stage of their activities, they were not required to notify counsel or supply petitioner with an attorney. Appx. C at 61.

It is well-settled that the right to counsel does not attach until formal adversarial proceedings have been commenced against a criminal defendant. Kirby v. Illinois, 406 U.S. 682, 689 (1972) (holding that there was no right to counsel at pre-arraignment lineup; the right to counsel only comes into existence "at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."); Moran v. Burbine, 75 U.S. 412, 428 (1986) (Absent valid waiver, defendant has right to presence of attorney during any interrogation occurring after first formal charging proceeding, the point at which Sixth Amendment right to counsel initially attaches.).

The record indicates that proceedings against petitioner were initiated after the lineup. At that time, petitioner had no Sixth Amendment right to counsel, and petitioner thus cannot establish that the lineup was conducted in violation of his constitutional rights. See Grimes v. Goord, 371 F.Supp.2d 305 (W.D.N.Y. 2004); Williams v. Artus, -- F.Supp.2d ----, 2010 WL 768885, *4 (S.D.N.Y. March 8, 2010). Accordingly, the Appellate Division's determination was not contrary to, or an unreasonable application of Supreme Court precedent, and this claim is dismissed.

### 5. Ineffective Assistance of Trial Counsel

In the fifth and final ground of his habeas petition, petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of counsel for the following reasons: (1) that attorney James Hinman improperly "abandoned" the line-up issue (Ground Four) at the Wade hearing, and that attorney Joseph Damelio subsequently failed to pursue this issue at trial after Hinman was discharged; (2) his assigned attorneys failed to call a witness for the defense; and (3) that, collectively, the seven attorneys who represented him throughout the course of his legal proceedings failed to provide "meaningful assistance." Pet. at Attach. #5, Ground Five. Petitioner raised these issues in a *pro se* brief on appeal, and they were rejected without opinion. Because it is unclear whether the state court adjudicated these issues on the merits, the Court will review them *de novo*. See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

### a. Failure to Pursue Line-Up Issue

First, Petitioner contends that attorney Hinman improperly "abandoned" the line-up issue at the Wade hearing, and that attorney Damelio failed to subsequently pursue this issue at trial

after Hinman was discharged. See Pet'r. Mem. 17 (Dkt. #12). The Court finds this argument unpersuasive. As discussed above in Part III.B.4, the underlying claim -- that petitioner's right to counsel was violated when he was forced to appear in an investigatory lineup after he had requested the assistance of counsel -- has no merit. As such, counsel cannot be faulted for failing to pursue a meritless issue. See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). In this regard, petitioner has failed to overcome the presumption that counsel's performance was deficient within the meaning of Strickland. He has also failed to demonstrate that but for the alleged deficiency, the outcome of the trial would have been different.

### b. Failure to Call Witness

Next, petitioner argues that "none of his attorneys conducted an investigation of the victim's girlfriend, Luann Starkey ("Starkey"), who allegedly produced a sworn statement to police that she "did not see [petitioner] cut the victim." Pet'r Mem. 18. The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial, and, if reasonably made, will not constitute a basis for an ineffective assistance of counsel claim. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (citing United States v. Murray, 751 F.2d 1528, 1535 (9th Cir.), cert. denied, 474 U.S. 979 (1985). Here, Petitioner has failed to

demonstrate that, under the facts and circumstances of this case, defense counsel's failure to call Starkey as a witness was unreasonable.

First, Starkey was not an eyewitness to the crime, nor did she state to police that she did not see petitioner murder the victim. Rather, in her sworn statement to police, Starkey stated that, on the day of the murder, she was "in and out of sleep" in an adjacent apartment. See Supp. Deposition of L. Starkey (attached to Pet'r. Mem.). To that extent, assuming that the defense had called her as a witness at trial, her testimony would not have exculpated petitioner or assisted his defense in any way. Second, it is likely that the defense's decision not call Starkey as a witness was a tactical one insomuch as her credibility was questionable. In her sworn statement to police, she indicated that she had been "drinking beer" and smoking "dope" on the day of the murder and was asleep when the victim was stabbed. Starkey acknowledged that was asleep until the point when the police were inside the apartment and woke her up. Id. at 1.

Petitioner has thus failed to overcome the presumption that counsel's decision not call Starkey as a witness was reasonable under the circumstances. Moreover, the evidence against petitioner was overwhelming. Viewing the "totality of the evidence before the judge or jury," the Court cannot find that counsel's failure to call Starkey as a defense witness was prejudicial under the terms of Strickland. 466 U.S. at 695-96. Because petitioner has failed to

demonstrate that his attorney's conduct was deficient, there is no need to address whether petitioner suffered prejudice. Id. at 697.

### c. Cumulative Deficiencies from all Assigned Attorneys

Finally, petitioner alleges that he received ineffective assistance of counsel, as a whole, from all seven of his assigned attorneys. Pet'r Mem. 17. Petitioner's claim is conclusory in nature and, in any event, belied by the record. In one sweeping generalization, he asserts that, overall, "there was no legal research, no background checks or investigations for the [petitioner], no pre-trial motions, or preparations, no trial preparations, with the necessary motions that normally follow, no tactics, no strategy in anything that these [seven] attorneys did or didn't do for the [petitioner]." See Pet'r. Pro Se Appellate Br. at 8 (attached to Pet'r Mem.). The record reflects that throughout the course of his legal proceedings, seven attorneys were assigned to represent petitioner, two of which were relieved because petitioner threatened them. See Manuel, 39 A.D.3d at 1186. The record also establishes that petitioner's assigned attorneys aptly represented petitioner in his defense and, overall, provided him with competent representation by filing the proper motions before and during trial, putting forth a cogent theory of defense, delivering articulate opening and closing statements, cross-examining the prosecution's witnesses, and making the appropriate objections throughout trial. Thus, petitioner cannot demonstrate

that the conduct of his assigned attorneys, either individually or collectively, was deficient within the meaning of Stickland. Moreover, Petitioner has failed to demonstrate that but for the alleged deficiencies, the outcome of his trial would likely have been different, as the evidence of petitioner's guilt was overwhelming.

In sum, all of petitioner's claims relating to his attorneys' ineffectiveness are without merit. Accordingly, habeas relief is unavailable to petitioner, and Ground Five of his petition is dismissed.

**IV. Conclusion**

For the reasons stated above, Terry Manuel's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                           _____
                                                   S/Michael A. Telesca
                                                     MICHAEL A. TELESCA
                                              United States District Judge

Dated:     May 25, 2010
             Rochester, New York